**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Case No.: 11-111-01 RCL** |
| **JULIAN ZAPATA ESPINOZA** | |

**DEFENDANT JUAN CARLOS SIERRA'S**
**MEMORANDUM IN AID OF SENTENCING**

Julian Zapata Espinoza (Julian Espinoza), through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing. First and foremost, Julian Espinoza wishes to express to the Court; and through the Court to the victims, his deep remorse for his conduct that resulted in the tragic loss of life of Jaime Zapata, and the physical and psychological trauma caused to Victor Avila. Julian Zapata Espinoza has done everything in his power, since his capture, to atone for his conduct and demonstrate his commitment to rehabilitation. Mr. Espinoza is grateful to the government for its motion of reduction pursuant to 5K1.1, and wishes to supplement, not controvert, the government's sentencing memorandum. Mr. Espinoza prays that once the Court considers fully the factors codified in 18 U.S.C. § 3553(a), it will sentence the defendant to the 'lowest sentence.'

Because Mr. Espinoza does not take issue with much of the government's memorandum in aid of sentencing, including the recital of the facts now well known to this Court, this writing will focus on the punishment that Mr. Espinoza has already received in the six years and eight months he has waited for the final resolution of his case.

## Concise Sentencing Argument

As stated at length in the government's sentencing memorandum (ECF 55), on February 15, 2011, Julian Zapata Espinoza ordered an attack on a valuable armored vehicle, much desired by the Zeta organization of which he was a member. He did not know at the time that the vehicle bore diplomatic plates and was occupied by American agents under international protection. His intention was to force the occupants to abandon the vehicle so that the Zetas, an armed criminal organization, could take possession. He was armed with a semi-automatic pistol and fired shots intended to intimidate the occupants of the vehicle. When two of his subordinates fired into the vehicle, pandemonium resulted and all members of both squads (*estacas*) fired at the vehicle, killing Jaime Zapata and grievously wounding Victor Avila. Notwithstanding the grave and violent conduct that resulted in the death of Jaime Zapata, his death was not the result of intentional, premeditated conduct by Julian Zapata.

A sentencing reduction is merited in this case because Julian Espinoza admitted responsibility for his conduct, cooperated with the United States over a period of more than six years. During his six years of imprisonment, he was held in a Virginia county jail under harsh conditions, without access to programs, very limited communication with his family, or even his counsel. He also prays this Court will take into account that he will be imprisoned far from family, and will not be eligible for early release to a half-way house.

Julian Espinoza E. was arrested in Mexico on February 23, 2011, and held for extradition to the United States.

## Acceptance of Responsibility

Julian Zapata Espinoza immediately accepted responsibility for his conduct and was willing to plead guilty as soon as he understood that his admitted conduct in ordering an armed

carjacking resulting in death, was sufficient for a verdict of guilty of murder. Once Mr. Espinoza pleaded guilty, he was willing to tell the unvarnished truth about the incident on February 15, 2011, and other crimes that he committed while a member of the Zetas. From the very beginning of his meetings with prosecutors and investigators, he was credible, even when his perception of the incident was different from other narratives of the event.

**Cooperation with the United States**

It was not anticipated when Mr. Espinoza began his long process of cooperation, that it would take over six years for Mr. Espinoza to be sentenced. In fact, his matter was set for sentencing before but continued in the expectation that his help would be needed if co-defendants were extradited. A change of government in Mexico, made further extraditions unlikely for some time. As a result, Mr. Espinoza has spent further years in uncertainty. An uncertainty that has taken a considerable toll. In addition, as further discussed below, his conditions of confinement have been terrible.

When the possibility of extradition of his accomplices opened again, Mr. Espinoza's affidavits were indispensable, since they were needed to comply with the Mexican judicial requirements. It should be noted that Mr. Espinoza's cooperation placed him and his family at great risk of retaliation from the organization he betrayed. Nonetheless, he met repeatedly with United States authorities in order to clarify the events of February 15th and later.

Of course, Julian Espinoza's cooperation with the United States also was a powerful inducement for his co-defendants to plead guilty, saving the Court and the government considerable resources.

When a trial was set in the matter of Jose Garcia Sota and Jesus Quezada Piña, Julian met multiple times with the prosecution team for hours at a time and supplied both background and

specific information. Cross examined during the trial, he again took responsibility for ordering the attack.

**Harsh Conditions of Confinement**

Julian Espinoza sat in a Virginia county jail for over six years. For a long time he was under heightened security because of the seriousness of the charges against him. Restricted to his cell, he had no recreation, no programs available and no one to talk to. He almost always went hungry in a jail where inmates are fed a caloric minimum. Practically all of the inmates have family and friends who provide commissary money for the "extras" like soups, but not Mr. Espinoza. Only after a couple of years, was he allowed to take work assignments and earn some meager prison pay. From time to time he also worked for better off inmates to earn some money.

Throughout his six plus years of imprisonment, Mr. Espinoza had great trouble communicating with his counsel. His jail was 105 miles from his counsel's office. This limited the number of times counsel could visit. He sometimes was told by other inmates that he had made a mistake; that his attorney had deceived him, that the government would not comply with his plea agreement. Understandably this would cause him great anguish until his lawyer could visit with him. Even then, the uncertainty of his final sentence over so many years has weighed on his mind.

**Familial Circumstances**

Julian Espinoza is married and has 3 children. PSR ¶ 91-92. During the first year of his detention his only contact with his family was messages through his attorney. Eventually, Julian Espinoza has been able to establish some telephonic communication with his family but it has been difficult and sporadic. The Court should consider that Mr. Espinoza's imprisonment, will be

far from family and friends. He will not be able to watch his children grow up. Nor assist in their care.

***Smith* Departure**

Given the certain deportation of Mr. Espinoza back to Mexico at the end of his sentence, he qualifies for a sentence reduction consistent with *United States v. Smith*. A reduction in sentence of 6-months is respectfully requested.

**Proposed Sentence**

Given the extraordinary cooperation provided by Julian Zapata Espinoza, over an extended period of time. Given that Mr. Zapata Espinoza did not intend the death of Jaime Zapata nor the wounding of Mr. Avila.[1] Given that Julian Zapata Espinoza has already served 6 years and 8 months under harsh conditions of confinement, and that any further sentence will be served in a country foreign to Mr. Espinoza and far from his family. Mr. Zapata Espinoza respectfully suggests that a sentence of 300 months of confinement would serve the ends of justice and federal sentencing.

**WHEREFORE**, Mr. Julian Zapata Espinoza respectfully prays that this Court impose a sentence consistent with the parsimony provision of 18 U.S.C. § 3553(a).

Respectfully submitted,

Ron Earnest

_______________________

Ron Earnest
Bar No. 477305
P.O. Box 608

[1] "There is a line 'between homicide and other serious offenses against the individual." *See Enmund v. Florida,* 458 U.S. 782 (1982).

Riverdale, Maryland 20738
240.401.5277
RONEARNEST@GMAIL.COM

*Defense Counsel for Julian Zapata Espinoza*

**CERTIFICATE OF SERVICE**

I certify that a copy of Defendant's Memorandum In Aid Of Sentence was served upon all parties via the Court's electronic filing system.